**In re MINKER.**
**No. M-1588.**

United States District Court,
E. D. Pennsylvania.

Nov. 25, 1953.

W. Wilson White, U. S. Atty., Charles H. Greenberg, Asst. U. S. Atty., William B. Taffett, Esq., Immigration and Naturalization Service, Philadelphia, Pa., for United States.

Jacob Kossman, Philadelphia, Pa., for petitioner.

WELSH, District Judge.

This is a motion to quash and set aside a District Director of Immigration and Naturalization subpoena commanding the petitioner, Abraham Minker, to appear and testify in a matter concerning himself.

Petitioner's counsel, in the first instance, contends that the subpoena authority contained in Section 235(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1225(a), only extends to matters involving aliens and aliens and citizens coming into the United States and has no application to citizens residing in the United States. The contention, we think, is not well founded.

■ The pertinent language of Section 235(a) provides: "* * * The Attorney General and any immigration officer, including special inquiry officers, shall have power to require by subpoena the attendance and testimony of witnesses before immigration officers and special inquiry officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this Act and the administration of the service, and to that end may invoke the aid of any court of the United States. * * *"

The quoted language we think, is a clear expression of the Congressional intent. The intent is to grant to the Attorney General and the immigration officers subpoena power in matters relating to aliens and aliens and citizens coming into the United States and in matters which are material and relevant to the enforcement of the Act and the administration of the Service. Specifically, the intent, insofar as the instant case is concerned, is to grant the power to subpoena in matters which are material and relevant to the enforcement of the Act, which means of necessity matters material and relevant to the enforcement of all of the provisions of the Act, including the provision of the Act the

Service is attempting to enforce here, namely, Section 340, 8 U.S.C.A. § 1451, relating to revocation of naturalization. Obviously, said Section deals with citizens residing in the United States as it is concerned with the revocation of the citizenship of a person who has been naturalized. Petitioner and his counsel have knowledge of the fact that the Immigration and Naturalization Service is attempting to revoke petitioner's naturalization obtained in 1945 and that the instant subpoena was issued in aid of the investigation being conducted to accomplish that purpose.

A comparison of the prior statute, 8 U.S.C. § 152, and the present statute, 8 U.S.C.A. § 1225(a), supports the conclusion reached above that it was the intent of Congress by expanding the language in the present statute to broaden the subpoena power of the Attorney General and the Immigration and Naturalization Service so as to include the issuance of a subpoena not only in matters involving aliens and aliens coming into the United States but also in matters material and relevant to the enforcement of each and every provision of the Act of 1952. In 8 U.S.C. § 152 it is provided: "* * * Any district director of immigration and naturalization designated by the Commissioner or any inspector in charge shall also have power to require by subpoena the attendance and testimony of witnesses before said inspectors and the production of books, papers and documents touching the right of any alien to enter, reenter, reside in, or pass through the United States, and to that end may invoke the aid of any court of the United States; * * *." After using the words "the privilege of any person to enter, reenter, reside in, or pass through the United States", 8 U.S.C.A. § 1225(a) adds the words, "or concerning any matter which is material and relevant to the enforcement of this Act".

Finally, we attach no significance to the fact that the subpoena provision of the Act of 1952 is placed in that portion

of the Act dealing with the inspection of aliens, in the light of the Congressional intent to extend the subpoena power to matters material and relevant to the enforcement of each and every provision of the Act, including Section 340 relating to revocation of naturalization.

Secondly, petitioner's counsel contends that the present subpoena provision, Section 235(a), should not be construed so as to require the attendance and testimony of the party himself. The basis of the contention is that Section 235(a) uses the word "witnesses" and a party does not fall within that category. This contention, we think, is likewise not well founded.

Section 16, 8 U.S.C. § 152, in effect prior to the enactment of Section 235 (a), 8 U.S.C.A. § 1225(a), likewise used the word "witnesses" and the cases decided thereunder held that said word was sufficiently broad to include the party (the alien) himself. Loufakis v. United States, 3 Cir., 81 F.2d 966; United States v. Parson, D.C., 22 F. Supp. 149, reversed on other grounds but sustained as to the aforementioned proposition in Graham v. United States, 9 Cir., 99 F.2d 746; In re Estes, D.C., 86 F.Supp. 769 and Yanish v. Wixon, D. C., 81 F.Supp. 499. Thus, the same construction, we feel, should be placed on the present statute.

It is argued by counsel for petitioner that the strict limitation on the scope of administrative investigations, Jones v. Securities and Exchange Comm., 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015, supports his contention that the authority to subpoena "witnesses" does not include the authority to subpoena the party himself. The answer to this argument is that a more liberal view was adopted by the Court in 1950 in the case of United States v. Morton Salt Company, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401. That case shows that the power to conduct administrative investigations and incidental thereto the power to issue subpoenas to compel appearance and testimony in connection with those investigations were not limited to the same extent that judicial inquiries were limited. The adoption of this more liberal view was undoubtedly the result of increased experience with administrative investigations.

■ The other argument of petitioner's counsel is that if Congress wanted to grant the Service power to subpoena the party himself it could have done so by using the word "persons" instead of the word "witnesses". See Defense Production Act of 1950, 50 U.S.C.A.Appendix, § 2061 et seq. In this connection we point to the fact that the subpoena provisions of the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq., and the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., contain the word "witnesses", and it can hardly be contended that with respect to the enforcement of those Acts the right of subpoena does not flow against the person under investigation. Further, it is our thought that the failure of Congress to use the word "persons" in the subpoena provision of the Act of 1952 does not foreclose a finding that "witnesses", the word used by Congress, includes the party himself. Indeed, as has been seen above, because of the construction placed on the prior subpoena provision, 8 U.S. C. § 152, and because of the now more liberal view with respect to the scope of administrative investigations, the word "witnesses" as used in the Act of 1952 includes the party himself.

For reasons stated herein the motion to quash and set aside the subpoena commanding the petitioner to appear and testify in a matter concerning himself will be denied.

An order pursuant to the foregoing opinion will be entered.

■ In closing, it is noted that the opinion herein does not affect the right of the petitioner at the time his testimony is sought to be taken before the immigration officer to assert any right he may have under the Fifth Amendment to the Federal Constitution.