**UNITED STATES ex rel. BORACA v.
SCHLOTFELDT (two cases).
Nos. 6978, 6979.**

Circuit Court of Appeals, Seventh Circuit.
Jan. 2, 1940.

Rehearing Denied Jan. 29, 1940.

Paul V. Pallasch and Ewart Harris, both of Chicago, Ill., for appellants.

William J. Campbell, U. S. Atty., and Martin Ward and Roy D. Keehn, Jr., Asst. U. S. Attys., all of Chicago, Ill., for appellee.

Before SPARKS, TREANOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Stanislaw Boraca and Agnieszka Boraca appeal from decrees ordering that the writs of habeas corpus issued in this cause be discharged and that the petitioners be remanded to the custody of the Director of Immigration and Naturalization for deportation to Poland. The appeals were heard at one time and will be disposed of in one opinion.

Prior to 1903 Wojciech and Marja Szakula, married to each other, lived in Borzecin, Poland. During the year 1904 or 1905 they emigrated to the United States and located at Chicago, Illinois, remaining there until the decease of Wojciech in 1913. At the time of their emigration they left Agnieszka, appellant, their daughter, born December 28, 1903, at Borzecin, Poland, with her grandmother.

During the time they resided in Chicago there was born to them on August 20, 1908 a female child named Marja. In 1914, after the death of Wojciech, the widow returned to Borzecin, Poland, taking Marja with her, and there she lived with her daughters.

In 1925 Marja Szakula found it difficult to support herself and her two daughters, so she decided that Marja, who had been born in Chicago, should return to the United States. When Marja refused to go, Agnieszka was commanded by her mother to assume the name of Marja and to go at once to America. On August 10, 1925 Agnieszka, assuming to be Marja, made an application for a United States passport before a United States vice consul at Warsaw, Poland. The application was granted, and she entered the United States without inspection on January 2, 1926.

Stanislaw Boraca emigrated from Poland to Canada, disembarked at Halifax on July 5, 1926 and, from that date until his entry into the United States on November 26, 1928, resided and was domiciled in Canada where he was steadily employed. This appellant, who was also born at Borzecin, Poland, testified that he knew the Szakula girls slightly; that he knew that one of them had been born in the United States; and that in March of 1936 he learned for the first time that Agnieszka had been born in Poland.

In November of 1927 appellants were married to each other at Denver, British Columbia. In October of 1928 Agnieszka Boraca, claiming to be a citizen of the United States, made an application for the issuance of a non-quota immigration visa to permit Stanislaw Boraca to enter the United States as the husband of a United States citizen, a non-quota immigration visa was issued to him, and he entered the United States November 26, 1928. Appellants have since resided in Chicago, where Stanislaw Boraca has been steadily employed as a decorator. In 1931 a son Arthur was born, and he is living with his parents.

On February 12, 1935 Agnieszka Boraca, still using the name of Marja Boraca, applied for a United States passport which was issued; she sailed from New York City for Poland on March 21, 1935, and she re-entered the United States at New York on December 10, 1935.

The record further discloses that Stanislaw Boraca at all times up to March of 1936 was under the impression that his wife was a citizen of the United States;

and that he did not know that at the time he entered the United States he was not entitled to a non-quota immigration visa. It also appears that appellants have not been public charges, inmates of a public institution or persons afflicted with any ailment, but instead have conducted themselves in all respects as reputable and law-abiding citizens. Moreover, it appears that they have no means of support in Poland, and if deported would rather go to Canada at their own expense.

Upon this state of the record the Immigration and Naturalization Service found that at the time of entry Agnieszka Boraca was not in possession of an unexpired immigration visa as required by the Immigration Act of 1924[1] and that she admits having committed a felony or other crime or misdemeanor involving moral turpitude prior to entry into the United States, to-wit, perjury.[2]

The Service found that the immigration visa, with which Stanislaw Boraca had entered the United States, was not valid because procured by fraud or misrepresentation and that at the time of entry he was not a non-quota immigrant;[3] and that both appellants were subject to deportation to Poland under Sec. 19 of the Immigration Act of February 5, 1917.[2]

▇▇▇ Appellant Agnieszka Boraca admits she has no defense to the charge that she was not in possession of an unexpired immigration visa at the time of her entry into the United States, but she contends there is no evidence in the record sufficient to warrant a finding that she admitted having committed the crime of perjury.

Unhappily this contention is not well founded. It is provided in the Act of February 5, 1917[2] that "* * * any alien who * * * admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported." That perjury is a crime involving moral turpitude, there can be no question,[4] and the crime was completed

when she made the false statement under oath. United States ex rel. Majka v. Palmer, 7 Cir., 67 F.2d 146, 147. But counsel for appellants argues that "The Inspector omitted the elements of wilfulness and of knowledge in his definition of perjury." The "admission" referred to in the statute does not require the particularity for which counsel contends, Wong Yow v. Weedin, 9 Cir., 33 F.2d 377. It does however mean "an unequivocal acknowledgment of guilt, an acknowledgment which shall leave no fair ground for doubt or debate," Howes v. Tozer, 1 Cir., 3 F.2d 849, 850, and it must be explicit and voluntary, United States v. Williams, D.C., 203 F. 155, 157. In the course of the hearing the Inspector advised her that "the crime of perjury consists of swearing to false statements in a material matter before an officer authorized to take oaths in that matter." She admitted swearing that she had been born in Chicago and that that statement was false. She was asked "Do you admit the commission of the crime of perjury at that time?" and she answered "Now I know, and I admit that I committed perjury. I didn't know I had done anything so serious."

A careful examination of the record does not indicate that any unfairness was practiced in securing the admission. The facts are not controverted: - it is conceded that Agnieszka Boraca was born in Poland, and she testified that her mother told her to assume the name of Marja. Moreover, she knew she was not Marja and what she did was done wilfully. It is true she was not represented by counsel, but she was given the opportunity to secure counsel if she so desired.

▇▇▇ There remains one question before us, and we have given much consideration to it. Should these people be sent to Poland? We do not think so. We know that sometimes it is impractical to deport people to a certain country. In our case, deportation to Poland is fraught with serious and harsh consequences. The Poland of today is in a chaotic state, in a state of great political uncertainty, and represents at the most a broken country,

---

[1] 8 U.S.C.A. § 213(a), chapter 190, § 13(a), 43 Stat. 161.

[2] 8 U.S.C.A. § 155, chapter 29, § 19, 39 Stat. 889.

[3] 8 U.S.C.A. § 204(a), chapter 190, § 4(a), 43 Stat. 155.

[4] Ex parte Chin Chan On, D.C., 32 F.2d 828; Masaichi Ono v. Carr, 9 Cir., 56 F.2d 772; Kaneda v. United States, 9 Cir., 278 F. 694; United States ex rel. Majka v. Palmer, 7 Cir., 67 F.2d 146; and United States ex rel. Karpay v. Uhl, 2 Cir., 70 F.2d 792.

one in fact divided between the powers of war. We do not hesitate in stating that deportation to the Poland we know today is inhuman and shocking to the senses.

Under Section 20 of the Immigration Act of 1917,[5] the Secretary of Labor may send deportable aliens "to the country whence they came." In this case the Secretary of Labor ordered deportation to Poland. Ordinarily, deportation is to the country of birth, and usually the words "country whence they came" mean the country of nativity. However, where the record indicates that domicile had been acquired elsewhere, the words "country whence they came" does not necessarily mean the country of birth. United States ex rel. Di Paola v. Reimer, 2 Cir., 102 F.2d 40.

■ Stanislaw Boraca entered Canada legally and with the intention of making it his permanent place of abode. There he remained for almost two and one-half years and during all this time he was continually employed. As he states it, "the reason I did * * * come to this country was because I thought she (his wife) was legally in the United States and a United States citizen. I had a good job in Canada and I didn't have to leave Canada to come to the United States against the law." The record is clear that he did not intend to use Canada as a stopping-place before entering the United States.

As for Agnieszka Boraca's domicile, we know that she married Stanislaw in 1927 in Canada. While the evidence is not clear, we assume that thereafter and until November 26, 1928 they lived together in Canada as husband and wife. Under these circumstances, his domicile was her domicile. Cooper v. Beers, 143 Ill. 25, 32, 33 N.E. 61; Stevenson v. Baker, 347 Ill. 304, 320, 179 N.E. 842. Moreover, even though the wife resided in another place, the domicile of the husband was still her domicile. Anderson v. Watt, 138 U.S. 694, 706, 11 S.Ct. 449, 34 L.Ed. 1078.

On this record we conclude that Stanislaw and Agnieszka Boraca were domiciled in Canada before Stanislaw's entry in the United States. In this connection the case of United States v. Sisson, 2 Cir., 232 F. 599, is material. It was there held that an alien who had established his domicile in Canada for three or four years, had to be deported thereto, instead of to the country of his nativity. See also Ex parte Guest, D.C., 287 F. 884; Gorevich v. Zurbrick, 6 Cir., 48 F.2d 1054; United States ex rel. Mazur v. Commissioner, 2 Cir., 101 F.2d 707. The case of Palmer v. United States, 7 Cir., 65 F.2d 653, is distinguishable on the facts, for there the alien admitted that his stay in Canada was temporary.

We are, therefore, of the opinion that Stanislaw and Agnieszka Boraca may not lawfully be deported to Poland. The decrees are reversed and the causes remanded for further proceedings in conformity with the opinion.

Reversed, remanded.

### On Petition for Rehearing.

We believe that petitioner's inferences as to the effect of our decision are grossly ungrounded.

■ We neither concluded that the Poland of today was "non-existent" nor did we base our decision thereon. We noticed as a matter within the common knowledge of all, that existing conditions in Poland were serious.

We reversed and remanded this case for further appropriate proceedings. We reversed because the deportation statute authorizes deportation to the "country whence they came," and that country is not Poland. The undisputed facts in the instant case show that the aliens in question had acquired a domicile in Canada, and under the authorities in such circumstances the "country whence they came" is Canada. Gorcevich v. Zurbrick, 6 Cir., 48 F.2d 1054, 1055.

■ Ordinarily, where the record indicates but does not definitely show that the aliens have changed the domicil of origin, and where the immigration authorities have failed to inquire therein, the case will be remanded for a further hearing on the question of domicil. United States ex rel. Di Paola v. Reimer, 2 Cir., 102 F.2d 40, 41. But where the record definitely shows, as in the instant case, that the aliens have acquired a domicil in Canada, there is no occasion for remanding on the question of domicil, and in such a case it follows that an order deporting to Poland is unauthorized. United States ex rel. Mazur v. Commissioner of Immigration, 2 Cir., 101 F.2d 707.

---

[5] 8 U.S.C.A. § 156, chapter 29, § 20, 39 Stat. 890.

110

In addition, we remanded this case for further appropriate proceedings. It stands undisputed that the aliens in question are subject to deportation, and the Secretary of Labor may amend the warrant, directing deportation to Canada. Canada, the "country whence they came," may refuse to receive them, but the immigration statute provides for such a contingency. The Secretary may then deport them "to the country of which such aliens are subjects or citizens," and here such a country would probably be Poland. Gorcevich case, supra.

In conclusion, we say that this court neither has power nor seeks to exercise power to control the administrative discretion vested in the Secretary of Labor. However, this court has power to condemn action of the Secretary which does not fall within the confines of the authorizing statute. The petition for rehearing is denied.

Denied.